**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ANTHONY NEANOVER,	Case No. 1:16-cv-545
    Plaintiff,
                                    Bowman, M.J.
    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.	**MEMORANDUM OF OPINION AND ORDER**

Plaintiff Anthony Neanover filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. For the reasons explained below, I conclude that this case should be AFFRIRMED because the finding of non-disability is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In March 2012, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income (SSI) alleging a disability onset date of October 1, 2009 due to mental and physical impairments. After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On August 5, 2014, an evidentiary hearing was held, at which Plaintiff was represented by counsel. (Tr. 41-84). At the hearing, the ALJ heard testimony from Plaintiff and an impartial vocational expert. On October 1, 2014, ALJ Deborah Smith denied Plaintiff application in a written decision. (Tr. 21-34).

The record on which the ALJ's decision was based reflects that Plaintiff was born in 1973 and was 36 years old on the alleged onset date. (Tr. 45, 111). He reported completing the eighth grade and previously working as a mechanic/automotive painter, machine assembler, carpenter, head of maintenance, moving truck driver, and tow driver. (Tr. 48-54, 78-79). Plaintiff alleges disability based upon headaches, back pain, nerve damage and pain in the arms, as well has heart problems. Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "chronic obstructive pulmonary disease ("COPD") and right ulnar neuropathy." (Tr. 24). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform light work with the following limitations:

> He can only occasionally climb ladders, ropes, and scaffolds, can only frequently climb ramps and stairs, and must avoid concentrated exposure to extreme heat, extreme cold, humidity, fumes, odors, dusts, gases, and poorly ventilated areas.

(Tr. 25). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that jobs exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 22). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to SSI. (Tr. 32-33).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff

maintains that the ALJ erred by: 1) formulating an RFC that is contrary to the evidence of record, and 2) formulating hypothetical questions that did not accurately portray Plaintiff's impairments and limitations. Upon careful review and for the reasons that follow, the undersigned finds Plaintiff's assignments of error are not well-taken.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if

substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

**B. ALJ Decision is supported by substantial evidence**

*1. ALJ's RFC assessment*

Plaintiff argues first that the ALJ's RFC assessment is not supported by substantial evidence. Specifically, Plaintiff contends that in formulating Plaintiff's RFC

the ALJ improperly rejected the findings of Plaintiff's treating physician and also failed to fully and fairly develop the record. Upon careful review, the undersigned finds that Plaintiff's first assignment of error is not well-taken.

Plaintiff has a history of shortness of breath; chest pain/tightness; COPD; emphysema; asthma; bronchitis; hypertension; angina; coronary artery disease ("CAD"); back pain radiating to his legs (characterized as lumbosacral pain and painful lumbar radiculitis); right elbow pain/numbness and right arm neuropathy; alcohol dependence; and adjustment disorder with mixed anxiety and depressed mood. (Tr. 371-74, 377-85, 390-467, 474-82, 486-572, 590, 603-36, 639-43, 645-51, 655-64, 666-94, 712-15). His treatment records are primarily emergency room visits to address his various impairments and primary care at Family Health Center with F. Stuart Leeds, M.D. (Tr. 371-467, 563-72, 634-36, 666-94). He has previously been prescribed Nitroglycerin, Neurontin/Gabapentin, Imdur, Aspirin, Singular, Symbicort, Simvastatin, Spiriva, Mobic/Meloxicam, Advair, Albuterol/ProAir, and Wellbutrin. (Tr. 458, 486, 488, 563, 598, 603, 646, 655, 712).

In September 2009, he collapsed at work with acute chest pain and shortness of breath. (Tr 396-412). A Department of Corrections Mental Health Evaluation from January 2010 indicates Plaintiff was diagnosed with adjustment disorder with mixed anxiety and depressed mood and alcohol dependence in remission. (Tr. 416-21). Jail records indicate Plaintiff received mental health treatment in prison until March 2010. (Tr. 422-26). In November 2010, cardiologist Joseph K. Choo, M.D., diagnosed angina and indicated Plaintiff had at least moderate probability of significant coronary artery

5

disease. (Tr. 476). In October 2011, Dr. Choo indicated he suspected Plaintiff's issues were more pulmonary rather than cardiac but noted that "this is quite disabling and limiting to him." (Tr. 486). In December, Plaintiff was noted to have significant dyspnea at rest as well as with any exertion. (Tr. 488). In February 2012, Dr. Choo noted etiology was not clear and that Plaintiff was not responsive to his pulmonary regimen. (Tr. 490). In March, Plaintiff underwent an angiocardiogram and heart catheterization. (Tr. 492-562). In August 2012, he was referred for a pulmonary consultation by Dr. Choo. (Tr. 603-06). Eric J. Weinstein, M.D., assessed COPD, bullous emphysema, and dyspnea. (Tr. 605). He noted Plaintiff's pulmonary function testing seemed to indicate elevated airway resistance more consistent with asthma. (Tr. 605). He started Plaintiff on nebulizer therapy. (Tr. 605). In September, he noted nebulizer therapy had given Plaintiff some benefit but he continued to have difficulty with shortness of breath (most with activity or any bending over/lifting). (Tr. 607-08).

Plaintiff presented to the ER with chest pain multiple times in May and June 2013. (Tr. 666-94). In May 2014, Dr. Choo observed diminished breath sounds bilaterally and assessed chest tightness, dyspnea on exertion, bullous emphysema, COPD with asthma, fatigue, and bilateral leg pain. (Tr. 713).

In July 2012, Plaintiff underwent a consultative examination conducted by Dale Kimbrough, M.D. (Tr. 574-80). Dr. Kimbrough noted Plaintiff became short of breath with conversation and during the active portion of the physical examination. (Tr. 575). Plaintiff's grasp with his right hand was abnormal and right finger abduction and adduction was less than the left. (Tr. 577). He had reduced range of motion in his right

6

and left wrists. (Tr. 579). Dr. Kimbrough diagnosed COPD, asthma, and right arm weakness. (Tr 576). He indicated Plaintiff is physically limited in his ability to ambulate and stand. (Tr. 576). He noted Plaintiff is mildly limited in lifting heavy objects with his right hand. (Tr. 578).

In October 2012, a provider from the Family Health Center of Clinton Memorial Hospital completed an RFC questionnaire and indicated he had been treating Plaintiff since June 23, 2010 and diagnosing bullous emphysema and coronary artery disease.[1] (Tr. 637-38). Plaintiff was noted to need to recline or lie down in excess of traditional breaks and to take unscheduled breaks for 15-30 minutes with almost any exertion on his part. (Tr. 637). He could not walk a full city block without rest or significant pain, could sit for 60 minutes at a time for a total of 8 hours, stand/walk for 5 minutes at a time for a total of one hour, and occasionally lift up to 50 lbs. (Tr. 637-38). He was noted to likely be absent from work once or twice a month and was not physically capable of working an 8 hour day, 5 days a week on a sustained basis. (Tr. 638).

Additionally, Leanne Bertani, M.D., and Teresita Cruz, M.D., reviewed the record in August and November 2012, respectively. (Tr. 116-18, 132-34). Their review of the evidence included the opinion from Dr. Kimbrough from July 2012, which they gave "little" weight because the evidence did not suggest any limitations in Plaintiff's ability to stand or ambulate. (Tr. 116, 132). Both Dr. Bertani and Dr. Cruz independently determined that Plaintiff could lift 20 pounds occasionally, lift 10 pounds frequently,

---

[1] Notably, neither Plaintiff, nor his counsel could identify the doctor who signed this form. Plaintiff now contends that the author of the form was F. Stuart Leeds, M.D. his treating physician.

stand, walk and/or sit for about six hours in an eight-hour day, and had additional postural and environmental limitations. (Tr. 116-18, 132-34).

In formulating Plaintiff's RFC, the ALJ assigned significant weight to the findings of state agency consulting physicians Drs. Bertani and Cruz. In this regard, the ALJ noted that "these professionals enjoyed a considerable portion of the evidence available at the time of the hearing." (Tr. 30). The ALJ further noted that Drs. Bertani and Cruz's functional findings are accompanied by detailed narrative explanation and citations to the objective testing and treatment notes. *Id.*

The ALJ assigned little weight to the findings of Dr. Kimbrough. In so concluding, the ALJ noted that Dr. Kimbrough's extreme functional limitations were not supported by his thorough objective examination which yielded mostly normal results. Notably, Dr. Kimbrough reported that Plaintiff denied any musculoskeletal complaints, yet he concluded that Plaintiff was "physically limited in his ability to ambulate and stand." (Tr. 30). The ALJ found this finding to be "exceedingly vague" and "without any objective basis." *Id.* The ALJ further noted that aside from Plaintiff's subjective complaints, there were no objective findings found in Dr. Kimbrough's exam to support these limitations.

The ALJ also assigned little weight to the functional assessment from October 2012 from the Family Health Center of Clinton Memorial Hospital. (Tr. 30). The ALJ noted that the nature and extent of the author's relationship with Plaintiff is unknown even to Plaintiff and his attorney.

Plaintiff contends that the ALJ erred by failing to give controlling weight to the findings of Dr. Kimbrough and Dr. Leeds and improperly afforded significant weight to

8

the state agency consulting physicians Drs. Bertani and Cruz. Plaintiff's contentions are unavailing.

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner Of Social Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson* v. *Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician*. Wilson,* 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d)(2); *but see Tilley v. Comm'r of Soc. Sec.*, No. 09–6081, 2010 WL 3521928, at *6 (6th Cir. Aug.31, 2010) (indicating that, under *Blakely* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

As such, the opinions of treating and examining sources are generally entitled to more weight than opinions of consulting and non-examining sources. 20 C.F.R. §

404.1527(d); see also *West v. Comm'r Soc. Sec. Admin.*, 240 Fed. Appx. 692, 696 (6th Cir. 2007) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981)) ("[R]eports from treating physicians generally are given more weight than reports from consulting physicians ...."). However, an ALJ need not credit a treating physician opinion that is conclusory and unsupported. *See Anderson v. Comm'r Soc. Sec.*, 195 Fed. Appx. 366, 370 (6th Cir. 2006) ("The ALJ concluded, properly in our view, that the [treating physician's] treatment notes did not support and were inconsistent with his conclusory assertion that appellant was disabled."); *see also Kidd v. Comm'r of Soc. Sec.*, 283 Fed. Appx. 336, 340 (6th Cir. 2008) (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994)) (holding that an ALJ need not credit a treating physician's conclusory opinions that are inconsistent with other evidence).

Here, in rejecting Dr. Kimbrough's findings, Plaintiff argues that the ALJ improperly "substituted her own judgment for the opinions of physicians." (Doc. 14 at 11). Despite the ALJ's findings to the contrary, Plaintiff contends that Dr. Kimbrough's findings were supported by his examination report and therefore should have been afforded deference. In this regard, Plaintiff contends that Dr. Kimbrough noted Plaintiff became short of breath with conversation and during the active portion of the physical examination. (Tr. 575). Plaintiff's grasp with his right hand was abnormal and right finger abduction and adduction was less than the left. (Tr. 577). He had reduced range of motion in his right and left wrists. (Tr. 579). Plaintiff further notes that Dr. Kimbrough diagnosed COPD, asthma, and right arm weakness. (Tr. 576).

However, it is well established that a mere diagnosis or catalogue of symptoms does not indicate the functional limitations caused by the impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151 (6th Cir.1990) (diagnosis of impairment does not indicate severity of impairment). Furthermore, as found by the ALJ, Aside from Plaintiff's subjective complaints, there was nothing in Dr. Kimbrough's exam to support these limitations. See 20 C.F.R. § 404.1527(c)(3)-(4); s*ee also Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th Cir. 2009) ("Here, substantial evidence supports the ALJ's determination that the opinion of Dr. Boyd, Poe's treating physician, was not entitled to deference because it was based on Poe's subjective complaints, rather than objective medical data."); *Driggs v. Astrue*, No. 2:11-cv-229, 2011 WL 5999036 at *6 (S.D. Ohio Nov. 29, 2011) (Kemp, MJ) ("[A]n ALJ may reject the opinion of a treating source 'where the treating physician's opinion is inconsistent with [that source's] own medical records.'") (internal cite omitted).

Dr. Kimbrough's findings were also inconsistent with the mild objective findings contained in the record. As noted by the Commissioner, despite Plaintiff's complaints about right arm weakness and pain, he only minimally complained about this impairment to doctors, and sought no treatment for this condition after October 2011, when an EMG indicated only "mild compression syndrome" at his right elbow (Tr. 27, 565). As far as Plaintiff's complaints regarding shortness of breath, three separate physicians – including his primary care provider and respiratory and pulmonary specialists – opined that Plaintiff's complaints appeared out of proportion to his objective

11

test results, including pulmonary function tests and his documented COPD and asthma. (Tr. 27, 607, 636, 647-48).

Plaintiff's chest x-rays revealed negative findings, and a six-minute walking test in late August 2012 showed no cause for medical concern (Tr. 28, 595, 605, 609). Cardiology testing similarly revealed no medical explanation for Plaintiff's complaints. In December 2011, Plaintiff had a Lexascan, which revealed no evidence of ischemia and a normal ejection fraction of 64%. (Tr. 28, 488). Plaintiff failed to obtain a catheterization and angiogram, first ordered in 2009, until March 2012. (Tr. 28, 486, 490-91). At that time, testing revealed no evidence of heart-related disease. (Tr. 28, 499). In August 2013, specialists remarked that his entire cardiac workup was negative, including a recent EKG evaluation. (Tr. 28, 655, 683). In light of the foregoing, the ALJ's determination that Dr. Kimbrough's findings were entitled to little weight is supported by substantial evidence and should not be disturbed.

Plaintiff further argues that the ALJ failed to give controlling weight to the opinion from the Family Health Center. As noted above, at the time of the hearing, neither claimant nor his attorney could identify the doctor who signed the form at the hearing. (Tr. 31, 56). Plaintiff now contends that the opinion was authored by Dr. Leeds, his treating physician. A treatment note from the day before the opinion was signed indicated that Dr. Leed completed a form for Plaintiff, despite urging him to wait until "cardio and pulmonary evals are in," and the signatures are somewhat similar on the opinion and this treatment note. (Tr. 636). Plaintiff also points to evidence that he saw Dr. Leeds approximately six times; in September 2010, October 2010, October 2011,

12

January 2012, March 2012, and October 2012 (Pl. Br. at 12; Tr. 443-44, 458-59, 565-72, 536-36). As such, Plaintiff contends that as a treating physician, Dr. Leed's findings should have been afforded controlling weight. Plaintiff's contention is not well-taken.

Again, neither claimant nor his attorney could identify the doctor who signed the form at the hearing. (Tr. 31, 56). Furthermore, as noted by the ALJ, the doctor who completed the form stated that his "nature, frequency, and length of contact" was only "6/23/10," indicating, as the ALJ noted, that he had only seen Plaintiff during a single encounter in 2010. (Tr. 31, 637). In any event, even assuming Dr. Leeds was a treating physician, the ALJ properly weighed his assessment. It is well stabled that a treating physician's opinion is entitled to controlling weight only if it is well supported by clinical and laboratory findings and is not inconsistent with the other substantial evidence of record. See 20 C.F.R. § 404.1527(c)(2); see also SSR 96-2p; *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc). This opinion is wholly unsupported.

As noted by the Commissioner, the doctor who authored the opinion was unable to state whether Plaintiff's impairments were "reasonably consistent with the symptoms and functional limitations described in this evaluation" because the doctor was waiting for further information from a cardiologist and pulmonologist. (Tr. 31, 638).

Furthermore, Plaintiff cites to treatment notes indicated that he was seen by Dr. Leeds on six occasions. However, Dr. Leeds treatment notes review mostly normal findings. Notably, a medical opinion is only valid if it is based on objective evidence, including clinical and laboratory findings. *See Young v. Sec'y of HHS*, 925 F.2d 146, 151 (6th Cir. 1990) (Court rejected a treating physician's opinion because that physician

13

did not conduct psychological or psychiatric tests in forming his opinion); *Higgs v. Sec'y of HHS*, 880 F.2d 861, 863 (6th Cir. 1988) (holding that a lack of evidence in the record countered claimant's allegations of disabling impairments); see also SSR 96-4p ("Thus, regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings."). Here, the doctor's opinion was clearly not based on objective evidence, but instead on Plaintiff's subjective complaints. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 154 (6th Cir. 2009) (holding that an ALJ reasonably found that a treating physician's opinion was not entitled to deference because it was based on claimant's subjective complaints, rather than objective medical data). Accordingly, the ALJ properly weighed the opinion provided by the Family Health Center.

Next, purportedly relying on *Blakely v. Commissioner*, 581 F.3d 399 (6th Cir.2009), Plaintiff argues the ALJ improperly credited the finding of the state agency physicians because their opinions were not based on a complete case record. Notably, in *Blakely*, the ALJ credited the opinions of consulting physicians over the opinion of the plaintiff's treating physician. The Sixth Circuit held that "[i]n appropriate circumstances, opinions from State agency medical ... consultants ... may be entitled to greater weight than the opinions of treating or examining sources." (Id., at 409, quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *3 (July 2, 1996)). However, in *Blakely* the court reversed on grounds that the state non-examining sources did not have the opportunity to review

14

"much of the over 300 pages of medical treatment ... by Blakely's treating sources," and that the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Blakely,* 581 F.3d at 409 (quoting *Fisk v. Astrue*, 253 Fed.Appx. 580, 585 (6th Cir.2007)).

Nevertheless, the Sixth Circuit reiterated the general principle that an ALJ's failure to provide adequate explanation for according less than controlling weight to a treating source may be excused if the error is harmless or *de minimis,* such as where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." Id. at 409 (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 547 (6th Cir.2004)). Under *Blakely*, then, an ALJ may choose to credit the opinion of a consultant who has failed to review a complete record, but he should articulate his reasons for doing so. If he fails to provide sufficient reasons, his opinion still may be affirmed if substantial evidence supports the opinion and any error is deemed to be harmless or de minimis. *Swartz v. Astrue*, No. 10–605, 2011 WL 4571877, at *8 (S.D.Ohio Aug.18, 2011) (Bowman, MJ) ("an ALJ may choose to credit the opinion of a consultant who has failed to review a complete record, but he should articulate his reasons for doing so") (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir.2009)).

Here, the ALJ acknowledged that these doctors did not have access to the entirety of the evidence when they authored their opinions, and took that into account when weighing their opinions (Tr. 30). In addition, the ALJ recognized that these were opinions from nonexamining sources. The mere fact that Drs. Bertani and Cruz did not

15

have the opportunity to examine Plaintiff is not a reason to discount their opinions, but merely one factor to consider (Tr. 30). See 20 C.F.R. § 404.1527(c)(1) (examining relationship one of many factors considered when weighing medical opinion). Upon evaluation of the complete record, including the opinion evidence, Plaintiff's treatment history and testimony at the administrative hearing, the ALJ determined that the opinions of Drs. Bertani and Cruz were consistent with overall evidence of record and clearly articulated his rationale for doing so.

Last, in arguing that the ALJ's RFC finding is not supported by substantial evidence, Plaintiff contends that the ALJ failed to develop the record as required by Agency regulations. Specifically, Plaintiff argues that the ALJ should have recontacted Dr. Kimbrough, contacted the Family Health Center of Clinton Memorial Hospital to determine who wrote the opinion from that Center, and obtained a consultative exam regarding Plaintiff's mental impairments. Plaintiff's contentions lack merit.

Social Security proceedings are "inquisitorial rather than adversarial," such that an ALJ has a duty "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000) (citation omitted). However, ordinarily an ALJ "has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster,* 279 F.3d at 357 (citing 20 C.F.R. § 404.1517). "Only under special circumstances, when a claimant is without counsel, not capable of presenting an effective case, and unfamiliar with hearing procedures does the ALJ have a special duty to develop the record." *Rise v. Apfel, Comm'r of Soc. Sec.*, No. 99–6164, 2000 WL

16

1562846, at *2 (6th Cir.2000) (citing *Lashley v. Sec. of Health and Human Services*, 708 F.2d 1048, 1051–52 (6th Cir.1983)).

Here, Plaintiff is represented by counsel, and was represented by counsel at the administrative hearing. As detailed above, the ALJ properly evaluated the record evidence and reasonably accommodated impairments in her RFC finding. As such, the ALJ properly determined that the current record contained sufficient evidence to make a proper disability determination. *See Foster*, 279 F.3d at 357 (citing 20 C.F.R. § 404.1517) (an ALJ "has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary."). It is well established that Plaintiff has the burden of proving that he is disabled. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are . . . disabled."); see also SSR 86-8p ("The individual has the burden of proving that he or she is disabled and of raising any issue bearing on that determination or decision."). This burden includes providing medical and other evidence showing the severity of their impairments and how those impairments affect his ability to work. 20 C.F.R. § 404.1512(a)-(c). As such, Plaintiff's assignment of error should be overruled in this regard. Accordingly, the ALJ properly evaluated and weighed the opinion evidence in formulating Plaintiff's RFC.

2. *Step-Five Analysis*

Plaintiff's final assignment of error alleges that the ALJ's hypothetical questions to the vocational expert did not adequately portray Plaintiff's impairments; and as such, the ALJ erred in relying on the VE's testimony. The Sixth Circuit has repeatedly made clear that a hypothetical question need only reference plaintiff's credible limitations;

unsubstantiated complaints are not to be included in the question. *See McKenzie v. Commissioner of Soc. Sec.*, No. 99–3400, 2000 WL 687680, at * 4 (6th Cir. May 19, 2000). Here, the ALJ selected hypothetical questions which accurately described Plaintiff's limitations and the extent of his ability to perform work as supported by the evidence.

In this case, the ALJ properly determined that Plaintiff's subjective complaints relating to the functional limitations associated with his impairments were not fully credible. Thus, the ALJ was not required to include limitations in her hypothetical question that were not supported or not credible. S*ee Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."). The VE's testimony provided substantial evidence supporting the ALJ's finding that Plaintiff was not disabled because he could perform a significant number of jobs. (Tr.). *See Hall v. Bowen*, 837 F.2d 272, 273, 275–76 (6th Cir. 1988) (1,350 jobs is a significant number of jobs in Dayton area and national economy).

### III. Conclusion

For the reasons explained herein, **IT IS ORDERED THAT** Defendant's decision is **SUPPORTED BY SUBSTANTIAL EVIDENCE,** and **AFFIRMED,** and this case is **CLOSED.**

                                              */s Stephanie K. Bowman*
                                              Stephanie K. Bowman
                                              United States Magistrate Judge